**E-Filed 9/27/10**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| DUNG T. NGUYEN,<br><br>                    Plaintiff,<br><br>        v.<br><br>THE COMMISSIONER OF SSA,<br><br>                    Defendant. | Case No. 5:09-cv-02916-JF<br><br>ORDER[1] (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND |

## I. BACKGROUND

Plaintiff Dung T. Nguyen ("Plaintiff") filed the instant action on June 29, 2009, appealing a decision by Defendant Commissioner of Social Security ("Defendant"), denying him disability benefits and supplemental security income.[2, 3]  On July 9, 2009, the Court granted Plaintiff's

---

[1] This disposition is not designated for publication in the official reports.

[2] Plaintiff's application for disability insurance benefits under Title II of the Social Security Act does not appear in the record, but the administrative law judge acknowledged that Plaintiff did file for such benefits.  (Administrative Record ("AR") 10, 52.)

[3] The challenged decision was rendered by Administrative Law Judge Lauren R. Mathon ("the ALJ") on April 18, 2008.  The ALJ's decision became final on April 23, 2009, when the

application to proceed *in forma pauperis*.  The parties have filed cross-motions for summary judgment.  For the reasons set forth below, the Court will grant Defendant's motion and deny Plaintiff's motion.

The following facts are taken from the ALJ's decision of April 18, 2008 and the accompanying Administrative Record ("AR").  Plaintiff was born on October 1, 1958 in Vietnam, where he attended school through the twelfth grade.  (AR 13.)  He immigrated to the United States in July 1981 and is now a citizen of the United States.  (*Id.*)  His most recent employment was with Silicon Graphics from 1993 to 1998.  He worked as a "rework technician" and in the shipping and receiving department.  (AR 13, 122.)  His job required that he lift ten to fifteen pounds, sit half of the work day, and stand or walk the remaining half of the work day.  (AR 13.)  He left that job following an operation and has not returned to work.  (*Id.*)  Plaintiff claims to suffer from a variety of symptoms, including recurrent nausea and vomiting; recurrent fevers; weakness; poor appetite with weight loss; chronic fatigue; persistent and recurrent abdominal pain, cramping, and tenderness; and radiation of abdominal pain to the back.  (*See* AR 409 (Chronic Pancreatitis Medical Assessment Form completed by Dr. Ruel Garcia).)  Following his operation, Plaintiff applied for and received Social Security Benefits from June 13, 1997 through July 2003.  (AR 13.)  Plaintiff's benefits were terminated because Defendant determined that Plaintiff's medical condition had improved to the point to where he no longer was disabled.  (AR 51.)  Plaintiff did not appeal that decision.  (AR 52.)  On March 16, 2006, the Plaintiff filed a new set of applications for disability insurance benefits and supplemental insurance income.  (AR 10.)  Plaintiff alleges that November 1, 2003 is the onset date of his current disability.  (AR 10.)  His applications were denied initially on July 12, 2006 and on reconsideration on March 23, 2007.  (*Id.*)  Subsequently, Plaintiff requested a hearing before the ALJ.  (*Id.*)

The ALJ determined that Plaintiff was not entitled to benefits because he was "capable of his past relevant work."  (AR 17.)  The ALJ evaluated Plaintiff's condition pursuant to the five-

Appeals Counsel of the Social Security Administration denied Plaintiff's request for administrative review of the decision.

Case No. 5:09-cv-02916 JF
ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
(JFEX1)

1   step, sequential process required by 20 C.F.R. §§ 404.1520(a) and 416.920(a).  At step one, the

2   ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since

3   November 1, 2003.  (*Id.* at 12.)  At step two, the ALJ found that Plaintiff's diabetes mellitus and

4   pancreatitis constituted severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c).  (*Id.*

5   at 13.)  At step three, the ALJ concluded that Plaintiff did not have an impairment or

6   combination of impairments that met or medically equaled one of the impairments in 20 C.F.R.

7   pt. 404, subpt. P, App. 1.  (*Id.*)  Specifically, the ALJ found that Plaintiff's condition did not

8   satisfy Listing 5.08 ("weight loss due to any digestive disorder") because Plaintiff "generally had

9   a body mass index [("BMI")] over the 17.5 kg/m$^2$ threshold in Listing 5.08."  (*Id.*)  The ALJ

10  determined also that Plaintiff's condition did not satisfy Listing 9.08 (for diabetes mellitus)

11  because there was "no evidence" of neuropathy, acidosis, or retinitis proliferans.  (*Id.*)  At step

12  four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the

13  "full range of light work as defined by 20 C.F.R. 404.1567(b) and 416.967(b)."  (*Id.*)  In reaching

14  this conclusion, the ALJ concluded that Plaintiff's "statements concerning the intensity,

15  persistence and limiting effects of [his] symptoms are not credible . . . ."  (*Id.* at 14.)  The record

16  includes the statements of certain physicians who opined that Plaintiff was disabled, and the ALJ

17  discounted those opinions also because they were unsupported by treatment notes, were based on

18  "an uncritical acceptance of [Plaintiff]'s statements," and were internally inconsistent.  (*Id.* at 15-

19  16.)  The ALJ did not reach step five, concluding that Plaintiff could perform his previous job at

20  Silicon Graphics and was not disabled.  (*Id.* at 17.)

21                                    **II.  LEGAL STANDARD**

22  **A.      Standard for reviewing Defendant's decision**

23          Pursuant to 42 U.S.C. § 405(g), the Court has the authority to review Defendant's

24  decision denying Plaintiff benefits.  The Court must affirm the ALJ's decision if it determines

25  that substantial evidence supports the ALJ's findings and that the ALJ applied the correct legal

26  standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d

27  1255, 1257 (9th Cir. 1992).  In this context, the term "substantial evidence" means "more than a

28

Case No. 5:09-cv-02916 JF
ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
(JFEX1)

1   mere scintilla but less than a preponderance – [it] is such reasonable evidence that a reasonable

2   mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also*

3   *Drouin*, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the

4   ALJ's decision, the Court examines the administrative record as a whole, considering adverse as

5   well as supporting evidence.  *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501

6   (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the

7   Court must defer to the ALJ's decision.  *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

8   **B.      Standard for determining disability**

9           A person is "disabled" for purposes of receiving Social Security benefits if he or she is

10  unable to engage in any substantial gainful activity caused by a physical or mental impairment

11  that is expected to result in death or that has lasted or is expected to last for a continuous period

12  of at least twelve months.  *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452

13  (9th Cir. 1984).

14          Social Security disability cases are evaluated using a five-step, sequential process.  20

15  C.F.R. § 404.1520(4).  In the first step, Defendant must determine whether the claimant currently

16  is engaged in SGA;[4] if so, the claimant is not disabled, and the claim is denied.  *Id.*  If the

17  claimant is not engaged in SGA, the second step requires Defendant to determine whether the

18  claimant has a "severe" impairment or combination of impairments that limit significantly the

19  claimant's ability to perform basic work activities; if not, the claimant is not disabled, and the

20  claim is denied.  *Id.*  If the claimant has a "severe" impairment or combination of impairments,

21  the third step requires Defendant to determine whether the impairment or combination of

22  impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. pt. 404,

23  subpt. P, App. 1.  If so, the claimant will be found to be disabled.  *Id*.  In the fourth step, if the

24  impairment has no equivalent in step 3, Defendant must determine whether the claimant has

25

26

27          [4] SGA is work that involves significant physical or mental activities performed for pay or

28  profit. *See* 20 C.F.R. § 404.1520(b); *see also* 20 C.F.R. § 404.1572 (elements of SGA).

4

1  sufficient RFC[5] to perform his or her past work. *Id.* If so, the claimant is not disabled and the

2  claim is denied. *Id.* The claimant has the burden of proving that he or she is unable to perform

3  past relevant work. *Drouin*, 966 F.2d at 1257. If the claimant meets this burden, he or she has

4  established a *prima facie* case of disability. Finally, in the fifth step of the sequential analysis,

5  the burden shifts to the Commissioner to establish that the claimant can perform other substantial

6  gainful work.[6] *Id.*; 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th

7  Cir. 1995), *as amended* April 9, 1996; *Drouin*, 966 F.2d at 1257.

8                                **III. DISCUSSION**

9          Plaintiff contends that the Court should reverse Defendant's final decision and remand

10  this case to the SSA for immediate payment of benefits. Alternatively, Plaintiff asks that his case

11  be remanded for further administrative proceedings to determine whether he is disabled. The

12  specific issues raised in this case are whether the ALJ properly: (A) concluded that Plaintiff's

13  only severe impairments were diabetes mellitus and pancreatitis; (B) determined that Plaintiff's

14  condition did not meet or medically equal Listing 5.08; (C) discounted Plaintiff's testimony with

15  respect to his symptoms and limitations; and (D) discounted the opinions of Dr. Ruel Garcia

16  ("Dr. Garcia"), Dr. Mai Van Nhat ("Dr. Mai"), and Dr. Clark Gable ("Dr. Gable") when making

17  the RFC determination.

18  **A.    Whether the step 2 findings with respect to "severe" impairments are proper and**

19          **are supported by substantial evidence**

20          Plaintiff claims that Defendant erred by concluding that his only severe impairments were

21  diabetes mellitus and pancreatitis. He contends that he also suffered from pneumobilia and

22  chronic liver disease. Plaintiff acknowledges that the administrative record supports only an

23  _____

24          [5] A claimant's RFC is what he or she still can do despite existing exertional and
nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

25

26          [6] There are two ways in which Defendant may meet the burden of showing that there is
other work in significant numbers in the national economy that the claimant can perform: (1) by
27  the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines.
*Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

28

Case No. 5:09-cv-02916 JF
ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
(JFEX1)

1    inference that he suffered from these additional conditions, at least for part of the relevant time

2    period.  (*See, e.g.*, AR 212 (dated March 15, 2005, noting that "[m]ultiple gray-scale images" of

3    Plaintiff's abdomen were "consistent with pneumobilia"), 203 (dated March 29, 2006, noting that

4    Plaintiff was admitted to the emergency room "with multiple liver lesions"), 388 (dated June 9,

5    2006, noting that the previously identified lesions on the liver were "not as well seen."), 381

6    (dated August 1, 2006, noting that an abdominal CT scan was "suggestive of chronic liver

7    disease" and indicated "[n]umerous liver masses"), 353 (dated August 8, 2007, noting that

8    "[t]here is pneumobilia" following the review of an abdominal CT scan).  *But see* AR 237

9    (noting that Plaintiff had an abdominal ultrasound on February 8, 2004 "which showed [a]

10   normal liver").)

11        However, the "mere existence" of an impairment "is insufficient to justify an award of

12   benefits."  *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir. 1981).  There also must be "proof of

13   the impairment's disabling severity."  *Id.* (citing *Waters v. Gardner*, 452 F.2d 855, 857 (9th Cir.

14   1971)).  Plaintiff does not explain how the symptoms of his liver condition and pneumobilia

15   differ from those of diabetes mellitus and pancreatitis or how his claimed additional impairments

16   significantly limit his ability to perform basic work activities.  Nor does Plaintiff explain how his

17   liver condition and pneumobilia would meet or medically equal the criteria of an impairment

18   listed in 20 C.F.R. pt. 404, subpt. P, App. 1.  Finally, Plaintiff does not explain how his liver

19   condition and pneumobilia would affect Defendant's determination of Plaintiff's RFC.

20   Accordingly, the Court must defer to the determination of the ALJ with respect to these points.

21   *See Independent Towers of Wash. v. Wash.*, 50 F.3d 925, 929 (9th Cir. 2003) (quoting *DARE Am.*

22   *v. Rolling Stone Magazine*, 270 F.3d 793, 793 (9th Cir. 2001) (noting that a bare assertion does

23   not preserve a claim).

24   **B.**      **Whether there is substantial evidence for the finding that Listing 5.08 was not met**

25            **or equaled**

26        Plaintiff next contends that Defendant erred in concluding that his condition did not

27   satisfy Listing 5.08 (weight loss due to any digestive disorder).  In relevant part, Listing 5.08 is

28

6

satisfied by "[w]eight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." 20 C.F.R. pt. 404, subpt. P, App. 1, § 5.08. The parties agree that BMI equals Plaintiff's weight in pounds divided by the square of his height in inches, all multiplied by 703, *i.e.*, [(Weight (lbs.)/(Height (in.))$^2$](703). 20 C.F.R. pt. 404, subpt. P, App. 1, § 5.00(G)(2). The table below summarizes the record evidence with respect to Plaintiff's weight over the relevant time period. Plaintiff's height was not provided in several instances, but the only rational inference is that Plaintiff's height remained relatively consistent between measurements.

| AR No. | Date | Height[7] | Weight | BMI |
|--------|------|-----------|--------|-----|
| 406 | September 16, 1999 | 5'3" (63 inches) | 105 pounds | 18.60 |
| 322 | November 21, 2003 | Not provided | 110 pounds | 19.48 |
| 321 | April 24, 2004 | Not provided | 103 pounds | 18.24 |
| 297 | August 20, 2004 | Not provided | 105 pounds | 18.60 |
| 301, 303 | December 15, 2004 | Not provided | 105.4 pounds | 18.67 |
| 405 | January 31, 2005 | Not provided | 101 pounds | 17.89 |
| 320 | March 2005[8] | Not provided | 91.5 pounds | 16.21 |
| 319 | April 7, 2006[9] | Not provided | 96 pounds | 17.00 |
| 295 | June 6, 2006 | 5'3" (63 inches) | 100 pounds | 17.71 |
| 330 | August 31, 2007 | 5'4" (64 inches) | 38.55 kilograms (approximately 85.0 pounds) | 14.59 |

---

[7] Where no height is provided in the record, the Court assumes that Plaintiff's height is the same as in the previous measurement.

[8] Plaintiff contends that the date of this measurement is illegible. (*See* AR 320.) The upper right-hand corner of the document provides "MAR [illegible]5." (*Id.*) The only rational interpretation of the document is that it is dated some time in March 2005.

[9] Plaintiff claims that the date of this measurement also is illegible. (*See* AR 319.) The upper right-hand corner of the document provides "APR 0[illegible]." (*Id.*) However, the lower right-hand corner of the document states clearly "APR 07 2006." (*Id.*)

Case No. 5:09-cv-02916 JF
ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
(JFEX1)

| 318 | September 8, 2007 | Not provided | 87 pounds | 14.93 |

On four occasions, Plaintiff's BMI dropped below the 17.50 threshold provided in Listing 5.08.  However, no two of those instances occurred at least sixty days apart but within a consecutive six month period, the necessary time frame under Listing 5.08.  Plaintiff's BMI was under 17.50 in March 2005 and on April 7, 2006, but these measurements were taken more than six months apart.  Plaintiff's BMI was well under 17.50 on August 31, 2007 and September 8, 2007, but there were fewer than sixty days between the measurements.

**C.    Whether the ALJ improperly discounted Plaintiff's testimony with respect to his symptoms and limitations**

Plaintiff contends that Defendant erred by discrediting his testimony with respect to the frequency and severity of his symptoms.  The ALJ's assessment of a claimant's credibility must be "properly supported by the record" and "sufficiently specific" to assure the reviewing court that the ALJ "rejected the testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1995) (quoting *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1213-14 (11th Cir. 1991) (quotations omitted)).  Absent affirmative evidence of malingering, an ALJ may not discount a claimant's testimony without clear and convincing reasons.  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995); 20 C.F.R. § 404.1529(c)).  This Court must give deference to the ALJ's assessment of Plaintiff's credibility if it is supported by the record and applicable legal standards.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).

Among other things, Plaintiff testified that he could not work because he experienced

8

pain in his abdomen three times per day, each instance lasting between thirty to forty minutes. (AR 51.)  After each instance of abdominal pain, Plaintiff stated that he took medication for the pain and lay down to rest.  (*Id.*)  He claimed that without medication, the pain was "about" a seven or an eight on a scale of one to ten.  (*Id.* at 56.)  He also claimed that the pain was "less" when he did take medication.  (*Id.*)  The ALJ cited three reasons for determining that Plaintiff's testimony was not credible to the extent that it was "inconsistent" with her RFC assessment: the long gaps in his medical treatment, the "relatively" few office visits in the record in light of the "gravity" of Plaintiff's complaints, and the observations of Plaintiff's physical condition by Dr. Gable.  (AR 14-16.)  With respect to the gaps in Plaintiff's medical treatment, the ALJ noted that Plaintiff spent between twenty-seven and twenty-nine months in Vietnam from the start of 2004 through the end of 2007.  (AR 14.)  At the hearing, Plaintiff testified that he was in Vietnam for four or five months in 2004, (AR 54), nine or ten months in 2005, (*id.*), eight months in 2006, (*id.* at 53), and six months in 2007, (*id.*).  Plaintiff testified that he did nothing in Vietnam but "stay at home" with his family and did not engage in any activities.  (*Id.* at 57.)  He stated originally that he did not receive any Western medical care while in Vietnam after 2003 and took only herbal medicines.  (*Id.* at 54.)  However, he clarified later that he visited a Vietnamese hospital or emergency room twice in 2007.  (*Id.* at 56-57.)

Defendant relies upon *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), which held that an ALJ properly could infer that a claimant was "not as physically limited as he purported to be" because of the claimant's extended travel to Venezuela to care for an ailing sister.  The instant case is distinguishable from *Tommasetti* because Plaintiff claims that he did "nothing" rather than care for others when Plaintiff traveled to Vietnam.  (AR 57.)  Defendant also relies upon *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004), in which an ALJ discredited the testimony of a claimant who did not seek medical treatment for six months after an injury.  However, the failure to seek medical treatment was only one of several reasons that the ALJ in that case discredited the claimant, including contradictory doctors' opinions and the claimant's own contradictory statements, which "*together* constitute[d]

1    substantial evidence in support of the ALJ's negative credibility determination of [the claimant]."

2    *Id.* at 1197 (emphasis added).

3        Here, the ALJ also discredited Plaintiff's testimony because he saw Dr. Mai, his primary

4    care physician, only seven times from January 2001 to September 2007 despite the alleged

5    severity of his symptoms.  (AR 14.)  However, the ALJ did note that Plaintiff was admitted to the

6    hospital at least five times between December 2003 and August 2006 and that he received at least

7    four CT scans between June 2006 and March 2007 at times other than when he was admitted to

8    the hospital.

9        Nonetheless, "[w]hen evidence reasonably supports either confirming or reversing the

10   ALJ's decision, [a court] may not substitute [its] judgment for that of the ALJ."  *Batson*, 359

11   F.3d at 1196 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).  Plaintiff's extended

12   travel to Vietnam without receiving a significant amount of medical care reasonably supports the

13   ALJ's determination with respect to Plaintiff's credibility.  Likewise, Plaintiff's allegations with

14   respect to the severity his symptoms reasonably could suggest that he would have sought

15   additional medical attention if in fact he was suffering from such severe symptoms.  Moreover,

16   the ALJ noted the inconsistency between Plaintiff's testimony that he saw Dr. Mai every one and

17   a half months, (AR 54), and the record evidence showing that Plaintiff in fact saw Dr. Mai only

18   seven times between January 2001 and September 2007, (AR 14).  Finally, the ALJ noted that on

19   June 6, 2006, Dr. Gable observed that Plaintiff is "asymptomatic" at times and that he could get

20   on and off of the examination table "with ease."  (AR 16, 295.)  Plaintiff points out that Dr.

21   Gable opined that "[c]ertainly, frequency of severe pain requiring pain medication, on a regular

22   basis, certainly even 3 times a week, would certainly militate against full-time employment or

23   ongoing employment."  (AR 296.)  However, the issue here is whether Plaintiff's allegations of

24   the occurrence of severe pain three times per week are credible.  The ALJ concluded that

25   Plaintiff was not credible.  Because the totality of the evidence reasonably could support either

26   confirming or reversing the ALJ's assessment, the Court cannot conclude that the ALJ erred in

27   discrediting Plaintiff's testimony.

28

**D.      Whether the ALJ improperly discounted medical opinions with respect to Plaintiff's limitations when making the RFC determination**

Plaintiff contends that Defendant erred by discounting the medical opinions of Drs. Garcia, Mai, and Gable in determining his RFC.  Dr. Garcia completed a "Chronic Pancreatitis Medical Assessment Form" on February 5, 2008, in which he concluded that Plaintiff suffered from recurrent nausea and vomiting; recurrent fevers; weakness; poor appetite with weight loss; chronic fatigue; persistent and recurrent abdominal pain, cramping, and tenderness; and radiation of abdominal pain to the back.  (AR 409.)  Dr. Garcia opined that Plaintiff was unable to perform routine, repetitive tasks at consistent pace; detailed or complicated tasks, and fast paced tasks. (AR 410.)  He also stated that because of weakness, chronic fatigue, and chronic abdominal pain, Plaintiff required ten breaks during an average work day to lie down, change soiled clothing, or rest at unpredictable intervals.  (AR 411.)

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31).  The ALJ discounted the medical opinion of Dr. Garcia because the record did not contain the doctor's office notes.  (AR 15.)  "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Id.* at 1217 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).  Plaintiff did submit Dr. Garcia's office notes as part of his administrative appeal, but the notes are dated after the ALJ's decision of April 18, 2008.  (*See* AR 18, 419-33.)  Such evidence is not probative of Plaintiff's condition at or before his hearing.  *See Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 512 (9th Cir.1987) (citing *Ward v. Schweiker*, 686 F.2d 762, 765-66 (9th Cir. 1982)) (holding that evaluations prepared after a final decision denying benefits on a particular application were not probative of the claimant's condition at the hearing).

Plaintiff argues persuasively that the record is replete with clinical findings that support many of Dr. Garcia's assessments with respect to Plaintiff's symptoms, such nausea and

1    vomiting, (*see, e.g.,* AR 249 (dated February 1, 2003, noting that Plaintiff was suffering from

2    "associated nausea and vomiting"), 228 (dated February 25, 2005, noting that Plaintiff was

3    "chronically nauseous" and that there was "some vomiting")); recurrent fevers, (*see, e.g.,* AR 234

4    (dated February 25, 2004, noting that Plaintiff's temperature was "100.1"), 187 (dated March 25,

5    2006, noting a "low grade" temperature), 382 (dated August 1, 2006, noting "additional history

6    of fever" (reviewed by Dr. Garcia)), 416 (dated February 13, 2008, noting a fever); and persistent

7    or recurrent abdominal pain, cramping, and tenderness, (*see, e.g.,* AR 266 (dated February 1,

8    2004, noting severe epigastric pain), 237 (dated February 7, 2004, noting abdominal pain due to

9    peritonitis), 231 (dated February 25, 2004, noting "[g]radual onset [d]ull [a]bdominal pain

10   provoked by [n]othing with severity 10 on the scale of 10 since 90 minutes"), 358 (dated August

11   25, 2007, noting "lower abdominal pain, severity 10/10")).

12          Nonetheless, the critical aspect of Dr. Garcia's opinion is his assessment of Plaintiff's

13   ability to work.  Dr. Garcia concluded that Plaintiff required ten breaks equaling thirty minutes

14   each during an eight-hour work day.  (AR 411.)  None of the available medical records support

15   this conclusion.  The hospital records do not indicate that Plaintiff was suffering from fatigue or

16   weakness.  While the records do show that Plaintiff was suffering from a series of symptoms,

17   they do not establish that the symptoms occurred with such frequency and severity either as to

18   incapacitate him or require him to rest for substantial periods of time during a work day.

19   Plaintiff's own testimony supports such an inference, but as discussed above, the Court cannot

20   conclude that the ALJ erred in discounting that testimony.  Because Dr. Garcia did not personally

21   observe the frequency and severity of Plaintiff's symptoms or their effect on Plaintiff's ability to

22   work throughout the day, the Court cannot conclude on differential review that the ALJ erred in

23   discounting Dr. Garcia's opinion for lack of support in the record.  *See Bray v. Comm'r of Soc.*

24   *Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the ALJ determined that [the claimant's]

25   description of her limitations was not entirely credible, it is reasonable to discount a physician's

26   prescription that was based on those less than credible statements.").

27          For similar reasons, the Court cannot conclude that the ALJ erred in discounting the

28

12

1    opinions of Drs. Mai and Gable.  Dr. Mai opined that Plaintiff's experience of pain and other

2    symptoms was so severe that it "frequently" would interfere with Plaintiff's attention and

3    concentration.  (AR 402.)  However, neither Dr. Mai's treatment notes, (AR 318-23, 405), nor

4    the remaining medical records demonstrate that doctors observed the frequency with which

5    Plaintiff's symptoms affected his attention or concentration.  Dr. Gable opined that, "from strictly

6    the physical exam," Plaintiff could sit for up to six hours per day with "usual breaks," could

7    stand and walk, and "could certainly probably" lift twenty pounds "frequently and occasionally."

8    (AR 296.)  Although he also stated that Plaintiff's ability to work would be negatively impacted

9    by the occurrence of severe pain "even 3 times a week," (*id.*), Dr. Gable himself did not observe

10   Plaintiff suffering from his symptoms with such frequency and severity.  Instead, Dr. Gable

11   observed only that Plaintiff could get onto and off of the examination table "with ease," that the

12   range-of-motion about his joints was normal, that his gait was normal, and that he could make a

13   "full squat."  (AR 295-96.)  To the extent that Drs. Mai and Gable opined that Plaintiff's

14   conditions precluded him from work, those opinions appear to have been based largely upon

15   Plaintiff's own descriptions of his symptoms.  Because it cannot conclude that the ALJ

16   improperly discounted Plaintiff's credibility, the Court cannot conclude that the ALJ improperly

17   discounted opinions of Drs. Mai and Gable that depended upon Plaintiff's own reporting.  *See*

18   *Bray*, 554 F.3d at 1228.

## IV.  CONCLUSION

20          Concluding that the findings of the ALJ are supported by substantial evidence and were

21   reached pursuant to the proper application of the law, Defendant's motion for summary judgment

22   will be granted.  Plaintiff's motion for summary judgment or remand will be denied.

24   IT IS SO ORDERED.

25

26   DATED: 9/27/2010                        _____
                                             JEREMY FOGEL
                                             United States District Judge

Case No. 5:09-cv-02916 JF
ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
(JFEX1)